UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 97-10342-GAO

IAIN FRASER; STEVE TRITTSCHUH;
SEAN BOWERS; MARK SEMIOLI;
RHETT HARTY; DAVID SCOTT VAUDREUIL;
MARK DODD; and MARK DOUGHERTY,
Plaintiffs

v.

MAJOR LEAGUE SOCCER, L.L.C. and
UNITED STATES SOCCER FEDERATION, INC.,
Defendants

MEMORANDUM DENYING DEFENDANTS'
MOTIONS FOR JUDGMENT AS A MATTER OF LAW
January 19, 2001

O'TOOLE, D.J.

At the close of the plaintiffs' evidence, and again at the close of all the evidence, the defendants moved pursuant to Fed. R. Civ. P. 50(a) for the entry of judgment in their favor as a matter of law. I deferred ruling on the motions at the end of the plaintiffs' case, but heard argument on them prior to the submission of the case to the jury. At that time, I granted the motion as to the defendants who were individual investor-operators in Major League Soccer, L.L.C. ("MLS") and ordered judgment as a matter of law be entered in their favor. I now deny the motions in all other respects for the following reasons, summarily stated.

MLS asserts three grounds for its motion.  First, it says that the evidence would not support a finding by a rational jury that it and the United States Soccer Federation, Inc. ("USSF") had engaged in predatory or exclusionary conduct or had conspired to achieve an unlawful monopoly. The USSF's separate motion rests on the same ground.  Second, MLS contends that even if the plaintiffs had established that MLS possessed monopsony power in the relevant market for players' services, there was no evidence of harmful effects in the "downstream" or output market, which MLS contends must be shown, citing Kartell v. Blue Shield of Massachusetts, Inc., 749 F.2d 922 (1st Cir. 1984).  Finally, MLS asserts that a rational jury could not find on the evidence that the plaintiffs were injured in fact by any unlawful conduct by the defendants.

In ruling on a Rule 50 motion, of course, I consider the evidence not as I would have evaluated it, but as a reasonable jury might have evaluated it.  I do not make an assessment of the credibility or weight of the evidence, but rather determine only whether there could be an assessment of the evidence by a reasonable jury that would support a finding for the plaintiffs.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Russo v. Baxter Healthcare Corp., 140 F.3d 6, 8 (1st Cir. 1998).

As to the defendants' first argument, there was evidence from which a jury could reasonably find that MLS and the USSF cooperated to establish exclusive Division I status for MLS and to enforce the grant of exclusivity by threatening to sanction would-be competitors, and further that there was not a legitimate – that is, procompetitive – business justification for the exclusivity but rather that the purpose was anticompetitive.  These propositions were, of course, dependent upon the jury's agreeing with the plaintiffs as to the scope of the relevant geographic and services markets. The jury did not agree, as its answers to the special verdict questions established, so that it was

2

appropriate then to conclude that the plaintiffs' claims could not be sustained and that judgment should be entered in favor of the defendants on the basis of those answers.[1]   But if the jury had defined the relevant market as the plaintiffs proposed, there was evidence that could have supported a finding of exclusionary conduct that lacked legitimate business justification, though that was not a necessary conclusion.  Similarly, if the combined efforts of MLS and USSF were directed toward such unlawful conduct, then their joint action could have been found to have constituted a conspiracy to monopolize.

The answer is the same to MLS's argument that there was insufficient evidence of the fact of injury.   The evidence would have permitted the conclusion that, as a consequence of the defendants' actions, there was no real competition for Division I players' services within the United States.  Once again, the jury's resolution of the relevant market issues against the plaintiffs made it impossible for the plaintiffs to prevail.  But if the jury had accepted the plaintiffs' proposed market definition, then the jury could have found injury in fact from the absence of competition within that market.   From the proof of absence of competition it would be a permissible inference that the players were injured in the way antitrust policy assumes the absence of competition injures market participants – in this case, by eliminating the pressure to increase wages.

---

[1]  Because the plaintiffs' proposed market  definition was the fundament for the rest of the theory of liability, the jury was instructed that if it answered the relevant market special questions adversely to the plaintiffs, there was no need to go farther.  In my judgment, this was a proper instruction, consonant with Fed. R. Civ. P. 49(a).

There is an alternate way of looking at the matter, although I did not articulate it at the time: in effect, after the verdict was received, the Rule 50(a) motion could be considered to have been granted *pro tanto* for the balance of the case, the jury's answers having determined the relevant market issue against the plaintiffs, and I having then determined (by having structured the special questions as they were) that the plaintiffs' claims could not "under the controlling law be maintained . . . without a favorable finding [to the plaintiffs] on that issue." Fed. R. Civ. P. 50(a)(1).

Under either view, the result is the same.

MLS's other argument is that the plaintiffs failed to establish an anticompetitive effect in the "downstream" or output market, which MLS maintains is an essential element of the claims. I rejected a similar argument in declining to instruct the jury, as requested by MLS, that the existence of an adverse effect in the output market was an essential element of the plaintiffs' claims. In my view, the existence, or the absence, of anticompetitive effects in the output market was a fact that could be considered by a jury in deciding whether challenged conduct by a firm with market power was predatory or was aimed at excluding competition without legitimate business justification. I do not read Kartell as establishing, as MLS contends, that proof of anticompetitive effects in the output market is essential, at least where there is plausible proof of anticompetitive effects in the input, here labor, market.

For completeness, I do note that the only evidence of adverse effects in the output market was Professor Noll's unelaborated, and I think speculative, summary assertion that if USSF's sanction of MLS had not been exclusive, consumers would have benefitted from greater "output," giving fans in more cities the chance to go to Division I games, with higher quality players, and that conversely, consumers were harmed in being deprived of those benefits by the defendants' unlawful conduct. Professor Noll rested his opinion on his understanding of the way markets normally respond in competition, rather than on any concrete analysis of the output market at issue in this case, such as the analysis offered by Mr. Bortz for the defendants. Professor Noll's reasoning was essentially deductive, rather than inductive. (Jurors, of course, are instructed to reason inductively.) His opinion also failed to take account of the substantial amount of evidence casting doubt, to say the least, on the likelihood that, absent the exclusivity of MLS's designation, there would have been a viable competitive league. Professor Noll simply posited the existence of such a league, assuming that it

4

would exist if the defendants' barrier had not been erected. A reasonable jury could not accept his opinion without an evidentiary basis for finding that the assumption was sound.

More generally, there was no substantial basis in the evidence for concluding that MLS, if it was a monopsonist, behaved in the way monopsonists do when they abuse their market power. See generally, Roger D. Blair & Jeffrey L. Harrison, Monopsony: antitrust law and economics 62-75 (Princeton Univ. Press 1993). For instance, the uncontroverted evidence was that players' salaries generally went *up* in absolute terms during the period of exclusivity and thereafter, though in theory a monopsonist buyer ought to have been able to resist such increases.[2] As with Professor Noll's opinion about the output market, the plaintiffs' contention that without the defendants' anticompetitive actions salaries would have increased even more than they did is essentially a hypothesis that depended on proof that it was likely that there would be competition from a viable competing league, but there was no substantial support in the evidence for that likelihood.

I agree with the plaintiffs that the evidence did not establish that consumer prices were kept down in the output market by the single buyer's pricing of its input, making the analogy to the Kartell case, and Judge Breyer's aphorism about lower consumer prices, less than perfect. By the same

---

[2] Generally speaking, "[a] legitimate buyer is entitled to use its market power to keep prices down." Kartell, 749 F.2d at 929. See also Blair, Monopsony, p.69 ("[U]nilateral efforts by a monopsony to make purchase decisions in full awareness of their impact on price traditionally do not violate the antitrust laws.").

Interestingly, one of the ways a monopsonist might abuse monopoly power would be by engaging in predatory pricing whereby it *raises* the price it pays for an input, say labor, in order to increase costs in the short run, making it too unprofitable for others to compete and leaving the market to the single, high-paying buyer. See Blair, Monopsony, p.66. Thus, a potential competitor of MLS might argue that it was kept out of the market because MLS paid players higher salaries than necessary. In such circumstances, however, the players would obviously be benefitted, at least in the short run, and would probably lack an antitrust injury that would permit them to object to the predatory scheme. In any event, the plaintiffs did not make such an argument, and the evidence was not developed to support it.

5

token, however, the evidence was also insufficient to establish any genuine harm to consumers, Professor Noll's deductive speculation notwithstanding.   Thus, *if* the <u>Kartell</u> case could be understood to require plaintiffs in a single-buyer monopsony case to establish an adverse effect in the output market, I would agree with the MLS argument on this point, in light of what the evidence permitted.  But, as noted, I do not read the case to impose that requirement, and accordingly, reject this ground for judgment as a matter of law.

The pending motions are DENIED.


It is SO ORDERED.




_January 19, 2001_
DATE


_[signature]_
DISTRICT JUDGE